UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

WARDELL ANDREWIN,                                     CIVIL NO. 08-5866 (DWF/JSM)

      Plaintiff,

v.                                                    REPORT AND RECOMMENDATION

REENA ABRAHAM,

      Defendant.

JANIE S. MAYERON, United States Magistrate Judge

The above matter comes before the undersigned upon defendant's Motion for Summary Judgment [Docket No. 10]. This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c).

**I.    BACKGROUND**

On January 5, 2008, plaintiff was incarcerated in the B-West unit at the Minnesota Correctional Facility – Stillwater. Complaint, p. 4 [Docket No. 1]. The unit in which plaintiff was housed at the time was on lockdown and prison officials were doing cell searches. Id. Plaintiff was removed from his cell and handcuffed to a stair railing at the top of a stairwell. Id. Plaintiff became restless while standing there and attempted to sit down; in so doing, he fell down the stairs while still handcuffed to the railing. Id. The fall resulted in plaintiff injuring his arm and back. Id.

On January 5, 2008, plaintiff sent a kite to Unit Lieutenant Quist. Complaint, p. 10; Affidavit of Sarah McGee ("McGee Aff."), Ex. C (Kite dated January 5, 2008 and Response dated January 10, 2008). In that kite, plaintiff asked Lt. Quist why offenders

were not allowed to have a chair while they waited for cell searches, why it had been wet at the top of the stairs where he had been secured, why there was not something stating that the floor was wet, and why offenders could not be placed in a better place than handcuffed to a railing. Id. In response, Lt. Quist explained that during past lockdowns offenders were always secured near the stairs in the middle and ends of tiers. Id. Lt. Quist stated that he would check on whether offenders could have chairs because it was not an unreasonable request. Id.

On January 8, 2008, plaintiff sent a kite to defendant, who was the Unit Director at the time. Complaint, p. 10 (copy of Offender Kite Form dated January 8, 2008 and Response dated January 11, 2008); McGee Aff., Ex. C (same). This kite asked defendant why he had been handcuffed to a railing, why he had not been watched by guards and why he had not been given a chain. Id. Plaintiff also stated that his arm and back had gotten messed up and asked to see a specialist. Id. Defendant responded on January 11, 2008, asking plaintiff to send a kite to health services requesting to be seen by a specialist. Id. Defendant's response also stated that it is standard procedure to handcuff an offender while his cell is being shaken down, and that it is expected that an offender will not try to make any exaggerated body movements while cuffed during that time. Id.

On January 14, 2008, plaintiff sent a kite to the Associate Warden of Operations, John King. Complaint, p. 12 (copy of Offender Kite Form dated January 14, 2008 and Response dated January 22, 2008); McGee Aff., Ex. C (same). Plaintiff explained again how he fell down the stairs while handcuffed to the railing, and asked King why he was handcuffed to the railing at the top of the stairwell in the back of his unit with no guards

watching him, and why there had not been a chair upon which he could sit. Id. In response, King stated that he agreed it was not the best plan of action, that defendant had advised him of the issue, and that he and defendant discussed a better plan for the future. Id. King copied defendant on his response. Id.

On January 31, 2008, plaintiff sent a kite to Warden Lynn Dingle. McGee Aff., Ex. C (copy of Offender Kite Form dated January 31, 2008). In that kite, plaintiff reiterated the circumstances under which he was handcuffed to the stairwell and his resulting fall. Id. Plaintiff also summarized his kites to Lt. Quist, defendant and Associate Warden King, and pointed out that while Lt. Quist and defendant stated that it was procedure to handcuff inmates to the railing at the top of the stairwell, King disagreed and said it was not the best plan of action. Id. Plaintiff told Dingle that the issue had not been resolved and asked Dingle why he was handcuffed to the back stairwell railing without guards to watch him or a chair to sit in, and also asked Dingle whether it was her policy to handcuff offenders at the back stairwell railing. Id.

On February 14, 2008, plaintiff received a memorandum from John King, Associate Warden of Operations. Complaint, p. 15 (Letter from King to plaintiff dated February 14, 2008). This memorandum copied both Lynn Dingle, the Warden of MCF-Stillwater, and defendant. Id. The memorandum reads as follows:

> I have received your kites in which you stated that you slipped while being cuffed on the rail during a B-West shakedown.
>
> On Thursday, February 14, 2008, I had Regina Stepney, Program Director come to speak to you in your unit and address the issue on behalf of myself and Warden Lynn Dingle. As you are aware, it has been standard procedure in the past that all offenders be handcuff [sic] in that manner. We have a new cuffing procedure in B-west. In the future offenders will be offered a chair or handcuffed away from the stairwells to prevent similar incidents.

If you have any further concerns, feel free to address them to the B-West Program Director, Reena Abraham.

Plaintiff filed an Offender Grievance on February 22, 2008. McGee Aff., Ex. H (Offender Grievance dated February 22, 2008). Plaintiff again explained the circumstances of his fall. Plaintiff also summarized the informal grievances he filed and the responses he received, stating that while Quist and defendant agreed that their procedure was to handcuff inmates to the railings at the top of the stairwells, King disagreed stating that it was not proper procedure. Plaintiff stated that he was still going to the doctor for his back and requested a tort claim form so he could get help with his doctor expenses once he was released from prison because the incident was negligent. Id.

On March 17, 2008, Sara Hard, RN addressed plaintiff's concern that he was receiving improper or inadequate medical care in a Grievance Report. McGee Aff., Ex. I (Grievance Report dated March 17, 2008). Plaintiff had indicated that he wanted an x-ray and a back specialist, and that he believed his situation was being overlooked. Id. Hard reported that plaintiff had been seen by the practitioner on January 7, 14 and 22, and February 12 and 25, and had been seen by the physical therapist on January 10 16.[1] Id. The reports of the practitioner and the physical therapist did not indicate that a specialist was required, but that a decision regarding referral to a specialist would be made by the physical therapist after plaintiff saw him again. Id.

---

[1] McGee Aff., Ex. D (plaintiff's medical records from the State of Minnesota Department of Corrections); McGee Aff., Ex. E (plaintiff's physical therapy progress notes from the Minnesota Department of Corrections); McGee Aff., Ex. F (X-ray transcription report and patient report).

4

On October 29, 2008, plaintiff instituted this action under 42 U.S.C. § 1983. In this suit, plaintiff alleged that defendant was negligent for the procedure of cuffing him to the railing and not having security watch him. Complaint, p. 6. Plaintiff requested relief in the amount of $150,000 for pain and suffering.

## II.  STANDARD OF REVIEW

Summary judgment is proper if, drawing all reasonable inferences favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); see also Unigroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d 1217, 1219 (8th Cir. 1999). "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" DePugh v. Smith, 880 F. Supp. 651, 656 (N.D.Iowa 1995) (quoting Anderson, 477 U.S. at 248).

The party moving for summary judgment bears the burden of showing that the material facts in the case are undisputed. Celotex Corp., 477 U.S. at 322-23; see also Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). If the moving party has carried its burden, the non-moving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. Anderson, 477 U.S. at 256; Krenik v. County of LeSueur, 47 F.3d 953, 957 (8th Cir. 1995). "The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial." Minnesota Laborers Health & Welfare Fund v. Swenke, 2003

U.S. Dist. LEXIS 11439, *4-5 (D.Minn. 2003) (citations omitted). The non-moving party "must substantiate his allegations with sufficient probative evidence that would permit a finding in [their] favor based on more than mere speculation, conjecture, or fantasy." Wilson v. Int'l Bus. Mach. Corp., 62 F.3d 237, 241 (8th Cir. 1995).

### III. ANALYSIS

In his Complaint, plaintiff stated the following facts:

> 1/5/08 I was on lockdown in B-west housing unit in Stillwater CC an[d] [during] the lockdown they were doing cell searches an[d] I was took out of my cell an[d] handcuffed [during] the search to the stair railing at the top of the stairwell an[d] [during] a long wait I was restless from standing there an[d] tried to sit down an[d] [fell] down the stairs while still handcuffed to the railing injuring my arm an[d] back an[d] Ms. Reena Abraham was the B-west housing unit program director at the time 1/5/08 [during] my incident. So I [grievanced] the incident 1/11/08 an[d] Ms. Reena Abraham wrote me saying that it was her procedure to handcuff inmates to stair railing [during] lockdown an[d] cell searches an[d] the warden Ms. Lynn Dingle sen[t] me a letter of [apology] saying she was sorry for what had happen[ed] to me an[d] it wasn't proper procedure to handcuff inmates to railings…on 2/14/08 so I continue my process because my back is messed up an[d] the medical doctor determined something was wrong on 2/12/08 an[d] placed me on Vicodin an[d] Robaxin for my back the doctor name was Quanbeck I have everything enclosed with my claim including my letter of apology from the warden an[d] my medical records. An[d] also on 1/5/08 the incident was caught on tape recording an[d] camera to support my claim.

Complaint, ¶ IV. As to relief, plaintiff requested the following:

> I would like to be compensated for there [sic] negligence an[d] Ms. Abraham['s] procedure of cuffing me to the railing at the top of a stairwell an[d] not having any security to watch me in the some [sic] of 150,000 dollars for pain an[d] suffering.

Complaint, ¶ V.

On July 31, 2009, defendant moved for summary judgment. See Docket No. 10. Defendant's motion for summary judgment is based on four grounds: 1) allegations of

6

negligence alone are not sufficient to maintain a § 1983 action; 2) there is no allegation in the Complaint that defendant was personally involved in the alleged misconduct; 3) qualified immunity bars plaintiff's suit; and 4) the Court should decline to extend supplemental jurisdiction to hear plaintiff's state law negligence claims. Def. Mem., p. 5. On August 4, 2009, plaintiff filed a one-page response which simply stated that "[d]ue to the evidence on my behalf of this lawsuit, there is no reason for a dismissal of this case…because everything is self-explanatory." Pl. Resp. [Docket No. 15]. Plaintiff filed a second response on September 2, 2009, which was also one page and similarly stated that "[d]ue to the camera evidence an[d] the warden['s] letter of apology there is no need for a dismissal of this lawsuit." Pl. Second Resp. [Docket No. 17]. This response attached the same letter from John King, copying Warden Dingle, that was included as page 15 in the Complaint. On September 9, 2009, plaintiff filed a third response consisting of one sentence which stated "[d]ue to the evidence in my lawsuit there is no reason for dismissal of this case." Pl. Third Resp. [Docket No. 19]. Defendant did not file a reply to plaintiff's responses.

Plaintiff's Complaint does not allege a constitutional violation, which is a necessary predicate to a § 1983 action. A section 1983 plaintiff must prove the "(1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." Kuha v. City of Minnetonka, 365 F.3d 590, 606 (8th Cir.2003) (quoting Shrum v. Kluck, 249 F.3d 773, 777 (8th Cir.2001)). Section 1983 relief "is predicated on the denial of a right or interest protected by the Constitution." Dover Elevator Co. v. Arkansas State Univ., 64 F.3d 442, 445 (8th Cir.1995). Here, neither plaintiff's statement of claim nor his request for

7

relief references any constitutional provision, amendment or right. Rather, the Complaint and attached exhibits only allege that defendant was negligent in cuffing him to the railing during the search of his cell. See Complaint, ¶ V; see also McGee Aff., Ex. H (Offender Grievance dated February 22, 2008 in which plaintiff stated the incident was "negligent.").

"Mere negligence [is] insufficient to rise to a constitutional violation." Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997). See also Johnson v. Hamilton, 452 F.3d 967, 973 (8th Cir. 2006) ("[m]ere negligence does not rise to a constitutional violation"). Even grossly negligent conduct does not state a claim under 42 U.S.C. § 1983. Roach v. City of Fredericktown, Mo., 882 F.2d 294, 297 (8th Cir. 1989). Accordingly, plaintiff's claim must fail because negligence, even gross negligence, is not actionable under § 1983. Daniels v. Williams, 474 U.S. 327, 328 (1986). Furthermore, "'where a government official is merely negligent in causing [an] injury, no procedure for compensation is constitutionally required' and therefore no § 1983 remedy is available." Kotowski v. Fabian, 2007 WL 3232515 (D.Minn. Oct. 31, 2007) (quoting Davidson v. Cannon, 474 U.S. 344, 347-48 (1986)).

In addition, plaintiff's claim does not assert or implicate a federal constitutional violation. Negligent injury to an inmate by a corrections officer does not constitute a Fourteenth Amendment violation. See Daniels, 474 U.S. at 328 ("[T]he Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property"); Davidson, 474 U.S. at 348 ("[T]he protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials."). Similarly, mere negligence does not violate the

8

Eighth Amendment prohibition against cruel and unusual punishment. Standish v. Bommel, 82 F.3d 190, 192 (8th Cir. 1996). See also Whitley v. Albers, 475 U.S. 312, 319 (1986) ("To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests and safety."). Therefore, even assuming the facts as alleged by plaintiff are true, they do not amount to a constitutional violation. See Daniels, 474 U.S. at (inmate who slipped on a pillow left on a stairway by sheriff's deputy did not have basis for constitutional violation); Davidson, 474 U.S. at (inmate who was injured when prison officials failed to protect him from other inmates did not have basis for constitutional violation).

Because the Complaint only contains a singular claim of negligence, the action cannot be sustained under 42 U.S.C. § 1983, and the Court concludes that summary judgment in favor of defendants is appropriate. Accordingly, it is unnecessary for the Court to address the remainder of defendant's arguments for summary judgment.

## RECOMMENDATION

For the reasons set forth above and based on all the files, records, and proceedings herein, IT IS RECOMMENDED that:

Defendant's Motion for Summary Judgment [Docket No. 10] be **GRANTED**.


Dated: September 28, 2009

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

9

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **October 15, 2009**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this Rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.